UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
TERRE HAUTE DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA,<br>    *Plaintiff*,<br><br>vs.<br><br>JACOB E. LOWE,<br>    *Defendant*. | )<br>)<br>)<br>)    2:10-cr-7-JMS-CMM-25<br>)<br>)<br>)<br>) |

## ORDER

Presently before the Court is Defendant Jacob E. Lowe's (-25) Motion to Suppress. [Dkt. 555.] He claims that the Indiana law enforcement unlawfully conducted a warrantless search of a residence where he was a guest, located at 641 Jefferson Street, Montezuma, Indiana, and thus the evidence seized and all their fruits must be excluded. *See Elkins v. United States*, 364 U.S. 206, 224 (1960) ("[E]vidence obtained by state officers during a search which, if conducted by federal officers, would have violated the defendant's immunity from unreasonable searches and seizures under the Fourth Amendment is inadmissible over the defendant's timely objection in a federal criminal trial." (footnote omitted)).

### FINDINGS OF FACT

The Court held an evidentiary hearing on Mr. Lowe's motion. [*See* dkt. 646, 693.] After considering all the testimonial and documentary evidence received into the record, the Court now finds as follows:

1.    Parole Officers Dennis Marietta and Joseph Granda testified credibly. In making this finding, the Court has considered, among other things, their demeanor while on the witness stand and the consistency of their testimony with documents that were created at or near the time of the events at issue.

2. The credibility of Mr. Lowe's mother, Karen Marshall, was significantly undermined, among other things, by her (understandable) bias toward her son and by the inconsistency of her testimony with contemporaneous records.

3. Mr. Lowe's girlfriend Amy Board, was advised by counsel not to answer specific questions about her relationship with Mr. Lowe, and the Court sustained the objections finding the invocation of her Fifth Amendment privilege proper, in light of her pending criminal charge.[1] Ms. Board is charged with maintaining a common nuisance, and the Jefferson Street residence is the location that is the subject of the charge. Mr. Lowe's alleged involvement with methamphetamine at the Jefferson Street residence also formed the basis for her charge. The Court did admit into evidence an affidavit that Ms. Board executed shortly after Mr. Lowe's arrest (and well before her own), Exhibit F. However, the credibility of the affidavit is completely undercut by its inconsistency with the other evidence in the record and by her bias towards Mr. Lowe at the time the affidavit was executed.

4. Detective Justin Cole testified credibly. In making this finding, the Court has considered, among other things, Detective Cole's demeanor while on the stand, his willingness to admit when he did not know the answers of questions asked of him, and the consistency of his testimony with documents created at or near the time of the events at issue.

5. On February 23, 2010, Mr. Lowe was on parole from the Indiana Department of Correction. He began his parole in July 2009.

6. As a condition of parole, Mr. Lowe agreed, among other things, as follows:

> ABUSE OF ALCOHOL OR CONTROLLED SUBSTANCE – I understand that the following is a violation of my parole: a) being intoxicated

---

[1] The Court has drawn no inference from Ms. Board's invocations of her Fifth Amendment right to remain silent to most of the questions asked of her. Nor has the Court drawn any inference from Mr. Lowe's invocation of his Fifth Amendment right to remain silent.

> or b) using or possessing or trafficking illegally in a controlled substance….
>
> HOME VISITATION AND SEARCH….I will allow my supervising officer or other authorized officials of the Department of Correction to visit my residence and place of employment at any reasonable time….My person and residence or property under my control may be subject to reasonable search by my supervising officer or authorized official of the Department of Correction if the officer or official has reasonable cause to believe that the parolee is violating or is in imminent danger of violating a condition to remain on parole.

[Ex. 1.]

7. At some point between the time he was paroled and February 23, 2010, Mr. Lowe changed his primary residence from his mother's house, in Clinton, to 641 Jefferson Street, Montezuma, Indiana. He did so to live with his girlfriend Amy Board. He moved some of his clothes and personal effects there. And he met there with Parole Officer Marietta, who was supervising him at the time, on three occasions between January 5 and February 11, 2010.

8. On February 12, 2010, Parole Officer Marietta requested that Mr. Lowe be transferred to the parole officer responsible for Parke County because Mr. Lowe's new residence was outside Parole Officer Marietta's assigned area.

9. Parole Officer Granda officially became Mr. Lowe's supervising parole officer the morning of February 23, 2010, shortly before he visited Mr. Lowe at Mr. Lowe's residence.

10. When Mr. Lowe answered the door, Mr. Granda told Mr. Lowe that he was Mr. Lowe's new parole officer.

11. Upon seeing Mr. Lowe, Mr. Granda reasonably believed that Mr. Lowe was under the influence of drugs, in violation of Mr. Lowe's parole agreement.

12. Mr. Lowe voluntarily let Mr. Granda into his residence.

13. Mr. Granda entered with a good faith and reasonable belief that Mr. Granda had the right to do so, both from Mr. Lowe's immediate consent and from the advance consent Mr. Lowe previously provided in his parole agreement.

14. Once Mr. Granda entered, he saw two sets of digital scales with a white powdery substance on them, in plain view. He also saw a large knife, with blade approximately nine inches long, laying in plain view on the floor.

15. After Mr. Granda called for and received back up, he searched the rest of the residence, and Mr. Lowe was arrested.

16. Field testing on the scales showed them to have methamphetamine residue.

17. Another large knife was recovered as well.

## CONCLUSIONS OF LAW

Because the February 23 search at issue here occurred in Mr. Lowe's home without a warrant, the Government bears the burden of proving that an exception to the Constitution's warrant requirement applies. *Brigham City v. Stuart*, 547 U.S. 398, 403 (2006) ("It is a basic principle of Fourth Amendment law that searches and seizures inside a home without a warrant are presumptively unreasonable." (quotation and citations omitted)).

As Mr. Lowe's counsel conceded at the hearing, if the Government can establish that Mr. Granda's initial entry into Mr. Lowe's home was lawful, then Mr. Lowe's motion to suppress fails. Once inside, Mr. Granda saw a knife and scales in plain view, which were enough to justify Mr. Lowe's arrest. Mr. Granda didn't need a warrant to seize obviously incriminating items in plain view or to search in the immediate area around Mr. Lowe to secure the scene. *See Arizona v. Hicks*, 480 U.S. 321, 326 (1987); *Chimel v. California*, 395 U.S. 752, 763 (1969). The doctrine of inevitable discovery precludes suppression of all the remaining evidence that was

seized that doesn't fall under either of those two exceptions to the warrant requirement. *See Nix v. Williams*, 467 U.S. 431, 444 (1984).

The Government has satisfied its burden to prove the lawfulness of Mr. Granda's entry into Mr. Lowe's home: Mr. Lowe consented to the entry. *United States v. Parker*, 469 F.3d 1074, 1077 (7th Cir. 2006) ("The Fourth Amendment's probable cause and warrant requirements do not apply…where an authorized party voluntarily consents to a search." (citations omitted)). Mr. Lowe did so in two independently sufficient ways. First, as Mr. Lowe's counsel also conceded at the hearing, Mr. Lowe could—and did—prospectively consent to warrantless searches of his home as a condition of obtaining parole. *Cf. United States v. Barnett*, 415 F.3d 690, 692 (7th Cir. 2005) ("Nothing in the Fourth Amendment's language, background, or purpose would have justified forcing Barnett to serve a prison sentence rather than to experience the lesser restraint of probation. Nothing is more common than an individual's consenting to a search that would otherwise violate the Fourth Amendment, thinking that he will be better off than he would be standing on his rights."). While Mr. Lowe has argued that he was merely an overnight guest at the house and thus the prospective consent didn't apply, the Court finds that Mr. Lowe had made the house his home by the time of the search. Second, even if Mr. Lowe were merely an overnight guest at the house, Mr. Granda testified—without contradiction—that Mr. Lowe "let" him into the house after he identified himself as Mr. Lowe's parole officer. That consent was valid, especially in the absence of any evidence that Mr. Lowe ever objected to Mr. Granda's entry. *United States v. Lewis*, 608 F.3d 996, 999 (7th Cir. 2010) (affirming finding that overnight guest implicitly consented to the police's entry into the apartment after the guest opened the door a never objected to their entry) (citation omitted).

Accordingly, the evidence seized here, and their fruits, were not obtained in violation of the Fourth Amendment. Mr. Lowe's motion to suppress, [dkt. 555], is **DENIED**.

02/02/2011

_____
Hon. Jane Magnus-Stinson, Judge
United States District Court
Southern District of Indiana

**Distribution via CM/ECF only:**

Bradley A. Blackington
UNITED STATES ATTORNEY'S OFFICE
bradley.blackington@usdoj.gov

Kevin McShane
kmcshane52@hotmail.com